in New Orleans. If it pleases the Court, David Gardner for the petitioner, Kike Stoneman. Let's let your opponent sit up there. You're fine. You're fine. I just wanted to make sure he had his briefcase open and his pen out, like a D'Artagnan sword, ready to respond to your argument. I think that's necessary. Go right ahead. Thank you, Your Honor. This case arises with respect to an application by a 16-year-old young man to apply for admission to the United States. The immigration judge found the individual excludable, and then there was a lengthy asylum application. The immigration judge denied the asylum. The board, in a single-line decision, affirmed the decision of the immigration judge. Tell me if I understand this case essentially correctly. He came over here to see his aunt? That's correct. And if, before he came, he had applied for a student visa, he would have probably been okay? He may or may not have been okay, but that's actually the main focus of the argument. There's two parts to the case. He'd like to withdraw the current application, return, and then seek admissibility on a visa. Which was the appropriate procedure. And my understanding is you raised that before the immigration judge specifically. It was raised, actually, by the petitioner in Pro Se by his aunt. I understand. The immigration judge, in fairness, encouraged the government to consider an application for withdrawal. Can I ask you to stop right there just for a second? Can I ask the government a question? As I understand it, the government's opposition to the withdrawal of the application was that the individual might stay. He might not go back to, is it Taiwan? Hong Kong. Might not go back to Hong Kong and do what he's saying he wants to do. Is that right? Yes, that was the government's position. Is this, have you folks tried mediation of this dispute at all? Counsel and I had a discussion off the record. And the legal issue that I'd like to present to the court is actually jurisdictional. The procedure at that time, which was an exclusion, but I believe there's a similar proceeding today, was for counsel for the government to go to secondary inspection, deferred inspection, which make a recommendation. The government then presented to the immigration judge its objection to the withdrawal. The immigration judge then declined to withdraw the application. And the argument that I wish to present is that there is authority that the immigration judge could, of his own volition, have allowed the applicant to withdraw his application and the standards is if it's in the interest of justice. This was, there was no mediation at the time because the government unfortunately doesn't. It just, it struck me when I read the briefs in this case that you would like your client to return to the country from which he came and then apply for a student visa and come over and go to school. That was what the case was about. And if there were some way of washing this other stuff aside, he'd be perfectly entitled to do that. That's absolutely correct, Your Honor. Now stop this for a second. The government is concerned and in a general sense legitimately so that your client might not go back to Hong Kong and start this process. It just seems to this judge that that could be mediated. Does the government have any objection to mediating this case? I would have to check with our client to see if there's anything we can do about that. Notwithstanding my argument that I'm going to tell the court. I couldn't say that for sure right now. If the court would want us to explore that, I would be happy to. Okay. Then go ahead with your argument. Thank you, Your Honor. I also wanted to note to the court that the respondent has in fact left the jurisdiction. I believe I informed the court and I wish to inform the court that I had done so in writing that the petitioner has in fact left the country and is now in Hong Kong but has expressed an interest in pursuing this appeal for two reasons. One, he has a final order of exclusion against him, and secondly, he does still have a fear of remaining in Hong Kong. The legal issue here with respect to withdrawal is that there was extensive testimony taken and the immigration judge made specific findings that there was no immigrant intent. He made a specific finding there was no immigrant intent by the petitioner and there was no intent to perform labor. And it was agreed and there was no dispute that an innocent mistake had been made. The proper procedure should have been to apply for a student visa. At that point, the immigration judge deferred to the government and our argument is that he could have and should have evaluated the factors and in the interest of justice, particularly having regard to the age of a child and the circumstances and the credibility could have made a decision but actually failed to make that decision. Is it your argument that he was required to do that or that he could have? The case of Gutierrez, the board case, says it's permissible for the judge to do it and then sets forth a standard which says in the interest of justice that and my argument is that the issue having been presented to the immigration judge, he had the obligation to evaluate the factors and say it's in the interest of justice or it's not in the interest of justice at that particular point in time. Once this issue was not resolvable and was not able to be mediated, the immigration judge asked the petitioner through his aunt whether he had any fear of returning to Hong Kong. At that time, it was very shortly after the communist government's takeover of Hong Kong and there were a number of issues which came up in the course of this asylum which I've briefed, specifically the subjective state of mind of the petitioner who was a 16-year-old child who had a very vivid recollection when he was eight years old of the Tiananmen Square massacre of students. And the testimony of the petitioner, his father, a psychiatrist, was that this petitioner was afraid of a Chinese government because their soldiers kill students. And the argument is whether the subjective state of mind of this petitioner should have been viewed from the standard of a reasonable child or of an adult. That issue was not addressed by the judge. There is sub-authority in international law in the Convention for Protection of the Child that the best interest of a child should be considered in a children's refugee application. The objective evidence at that time, and I believe still currently, is that the Chinese government does persecute individuals who have opinions regarding human rights and there was a religious fear of religious persecution claim. It's submitted in the brief that the immigration judge made an error in that he focused on the fact that the petitioner was not baptized, although the petitioner testified that he was baptized, also on a regular basis. The final argument, Your Honors, at this time is that with a single line affirmance, the board did not separate out the issues either on asylum or on withdrawal, and there is no clear understanding on what basis they denied the application. You have a couple of minutes. Would you like to save it for rebuttal? Yes. Okay. Thank you for your argument. Thank you. Mr. Fiorino? Just by way of comment and not on your time on the clock, I'm not so sure who gets helped by this summary affirmance business of the BIA. It forces you to defend what immigration judges do, and sometimes they're not as careful as the BIA itself. Agreed. Yes. Go ahead with your argument. Thank you. May it please the Court, I'm Paul Fiorino for the Respondent. I wanted to address a threshold issue that I wasn't aware of until I walked into court today, and that's the fact that the petitioner has gone back to Hong Kong, and I think that could be a jurisdictional problem for the Court. The petitioner in this case was served with charging papers prior to the IRERA amendments in 1996. During that time, the judicial review provision under what was then Section 106A divested the Court of Jurisdiction over any petition for review when the alien has left the country. So, that's one threshold issue that I think the Court should look at. With respect to the immigration judges denying the withdrawal, the issue is the immigration judge was required to decide whether it was in the interest of justice to permit that, and the judge was bound to find... Unlimited discretion? What's that? Unlimited discretion? I don't know that the statute distinguishes unlimited discretion. Yes or no? Yes. But the discretion is guided by the interest of justice. Now, the immigration judge was... This was not an unsympathetic IJ, right? When you say he's not... I mean, it was not unsympathetic towards the petitioner. Oh, yes. He understood the equities. I've seen far harder hearts reflected in transcripts of IJs than this one. Yes. I mean, he did go out of his way to permit the petitioner and his aunt to articulate all that they wanted to, but in the end, he was constrained with the criteria and the board's decision of Adder Gutierrez. And that case that we cited in our brief tells us that the judge has to make that decision in the interest of justice, not necessarily in the best interest of the alien or the alien as a minor child, but in the interest of justice. And what the IJ did is he looked at the... Heard the testimony of the aunt, heard the testimony of the petitioner, and listened to the government, who was required at that point to join in a motion to withdraw, and looked at the equities and said that... I mean, looked at the evidence and said, well, this alien has shown that he's not ready, willing, and able to go back to Hong Kong immediately based on what he said at the time. Now, granted, he has gone back to Hong Kong now, but based on those criteria and the interest of justice being that the... You know, to effectuate the purpose of doing this would not be served because the alien hadn't shown, Mr. Cone hadn't shown that he wanted to go back immediately. We think it was not at all an abuse of discretion for the IJ to make that decision. With respect to the asylum claim that the petitioner has, I'm not sure to what extent it's actually moot because he's gone back to Hong Kong. It's clearly that he had no past persecution. There's no evidence of that, and the petitioner's counsel even conceded that. With respect to his well-founded fear of future persecution, similarly, there's really no evidence in the record, especially compelling evidence, that he would be persecuted on any ground. The Supreme Court recently, in some criminal cases, has stated as positively as they could possibly state it, that when it comes to sentencing, judges must act reasonably. That means no absolute discretion, like you say now, that immigration judges have. Do you think we ought to carry over to the immigration problem this reasonableness, that the Supreme Court has said that judges must treat other people reasonably? Well, are you talking about asylum, Your Honor, or are you talking about... I'm talking about sentencing, and I'm talking about actions of the administrative law judges in denying continuances because they have an absolute right of discretion, when the Supreme Court says that trial judges, when they sentence people to prison, must act reasonably. The question to you is, why shouldn't immigration judges act reasonably? Well, because I think in the first case, the Supreme Court was talking about criminal context sentencing guidelines. Secondly, when the statute talks about... It should not act reasonably, you're saying. Well, they should act reasonably, but the standard of review is abuse of discretion, and that's what we're looking at here. And the question for the Court is whether the I.J. abused his discretion. And as I've explained to the Court, he looked at all the evidence and looked at the matter of Gutierrez's decision by the Board and made a call. And the question is, did he act arbitrarily or capriciously or manifestly contrary to the law? That's a standard for abuse of discretion, and we say that he didn't do that in this case. With respect to the asylum claim, the only fear that the petitioner has is going back to a communist country, but there's really no evidence in the record, compelling evidence, that he'd be persecuted on any ground. That, if not, the Court has any further questions. There's no sin in not taking all your time, counsel. What's that? There's no sin in not taking all of your time. Thank you. Thank you for your argument. Rebuttal? What's your response to the suggestion that his or your client's departure deprives the court of jurisdiction? Your Honor, I believe that the Court does retain jurisdiction in exclusion matters, but I would want to brief that further. Very simply, there is a factual dispute as to what the immigration judge did. My reading of the transcript is that once the government had taken a position, the immigration judge simply backed out. He did not make a specific finding that it was in the interest of justice, for the reasons stated by counsel, that this petitioner should not withdraw. There's a back and forth as to whether or not the petitioner knew that he'd broken the law, but there were other findings that he'd made an innocent mistake and there was no fraud and there was no immigrant intent. In my view, he just declined to intervene because the government had taken a position, and the argument is one of jurisdiction, whether he had the obligation to make a specific finding, which I believe he didn't. And finally, there was one point admitted to make an argument, is that the immigration judge improperly focused on practices and future persecution in the Special Administrative Region of Hong Kong, which we still are uncertain as to how this will play out. But certainly at that time, as a matter of law, Hong Kong was part of China, and therefore, the general country conditions as they applied to China as a whole should have been applied. That should have been the standard. Thank you. Thank you for the argument. Thank both counsel for their arguments. The case just argued will be submitted for decision, and it may be that the panel will want some brief letter briefing on this point of jurisdiction. And if so, we'll issue an order. Thank you. Thank you very much for your time. It takes us to the next case on the calendar, which is McDonald. Counselor, President, if they'd come forward. Ms. Friedman, you're back. Yes, Your Honor.
judges: Ferguson, Noonan, Hawkins